UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSEPH JURKENAS, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:20-cv-00183-JCN |
| | ) | |
| CITY OF BREWER, et al., | ) | |
| | ) | |
| Defendants | ) | |

## DECISION AND ORDER ON PLAINTIFFS' MOTION FOR DIRECTED VERDICT AND MOTION FOR SUMMARY JUDGMENT

Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 against the City of Brewer and two municipal employees as the result of the City's alleged failure to conduct a hearing on whether Plaintiffs' home constituted a dangerous building under the applicable law. (Amended Complaint, ECF No. 6.)

Plaintiffs have moved for summary judgment and for a directed verdict. Following a review of the summary judgment record and after consideration of the parties' arguments, the Court denies the motions.

In their response to Plaintiffs' motion for summary judgment, Defendants asked the Court to enter summary judgment in their favor. The Court informs Plaintiffs that the Court will consider Defendants' request and, therefore, in accordance with Federal Rule Civil Procedure 56(f), will allow Plaintiffs time to respond to Defendants' request for summary judgment.[1]

[1] In addition to their reply to Defendants' response to Plaintiffs' motion for summary judgment, Plaintiffs filed a document entitled A Supplement to Plaintiffs' Motion for Summary Judgment and a Reply to an

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp*., 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the Plaintiff's claims, a trial-worthy controversy exists, and summary

---

Objection. (ECF No. 66) (hereinafter PRDSAMF). Defendants filed a motion to strike that document. (ECF No. 67.) Although the Court informed Plaintiffs that they are not entitled to file sur-replies, and even though the Court has warned Plaintiffs that it would strike such filings, the Court declines to strike this particular document because the majority of the submission can reasonably be construed as a response to Defendants' additional statements of material fact. Plaintiffs did not file their own statement of material facts in accordance with Local Rule 56, and did not file a document entitled as a response to Defendants statement of additional facts, but the document includes responses to many of Defendants' factual claims, including the assertions in the affidavit of James Smith, upon which assertions many of Defendants' statements of fact are based.

Plaintiffs also filed a 100-page Motion to Dismiss Objection, (ECF No. 69), replying to Defendants' response to Plaintiff's motion for summary judgment and an 85-page supplement to that Motion to Dismiss Objection. (ECF No. 70.) Although Plaintiffs have exceeded the deadlines and page limitations for summary judgment practice and stretched the limits of the leniency to be afforded pro se litigants, because the Court, upon Defendants' request, will consider Defendants' request for summary judgment, the Court will construe the documents as a combined reply, rather than a motion, and will consider the content of the documents and attachments in connection with Plaintiffs' motions and Defendants' request for summary judgment.

judgment must be denied as to any supported claim. *Id.* at 78 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## BACKGROUND

### A. Summary Judgment Record[2]

Plaintiffs Joseph and Patricia Jurkenas lived at a home in Brewer at 227 Wilson Street with Patricia's mother, Marie Pozniak. Marie was hospitalized in December 2012 and, later, was discharged and cared for at the Brewer home. (Attachment, No. 1-5.) Plaintiffs assert that beginning in October 2013, they began having difficulties with City officials and local police. (Attachments, ECF Nos. 1-3, 1-4, 1-5.) Plaintiffs assert the difficulties centered on the adequacy of care Marie was receiving at home and Plaintiffs' requests for ambulance services. (Attachments, ECF Nos. 1-3, 1-4, 1-5.)

On May 24, 2014, the Brewer Fire Department was dispatched to the residence following a report of a possible fire. (Thibodeau Incident Report at 3, ECF No. 59-6.) A smell of rubber or plastics was noticeable outside, and when no one answered knocks at the front door, the Fire Department kicked the door in and entered. (*Id.*) There was smoke throughout the house. (*Id.*) Firefighters assert that when they heard someone calling for

[2] Because Plaintiffs did not submit a statement of material facts in accordance with Local Rule 56, the following factual summary is based primarily on Defendants' statement of additional facts and exhibits, which are deemed true for purposes of summary judgment pursuant to the local rule. I have included some additional facts discussed by Plaintiffs in their other filings and supported by their exhibits even though as reflected by Local Rule 56, the Court has no independent duty to search the record for statements favorable to Plaintiffs.

help,[3] they moved up the stairs to find Marie Pozniak and Patricia Jurkenas, who were subsequently evacuated from an upper level of the house.[4] (*Id.*) After investigating the source of the smoke, the fire department found the boiler in the basement to be malfunctioning and shut it off by the main breaker in the electrical panel. (Thibodeau Incident Report at 3–4.) After ventilating the house for a time, firefighters discovered oil on the basement floor and exposed electrical wires and open junction boxes in the basement; they then called the Deputy Chief of the town fire department, the town Code Enforcement Officer, and the state Department of Environmental Protection (DEP). (*Id.* at 4.)

Deputy Fire Chief Cammack met Defendant Brooks, a Code Enforcement Officer for the City of Brewer, at the house and confirmed there was oil on the basement floor and unsafe electrical installations in the basement. (Cammack Incident Report at 1, ECF No. 59-7.) Power to the home was disconnected at the meter. (*Id.*) The DEP responder estimated five gallons of oil had spread over the brick floor in the basement; the responder placed sorbents on the floor. (DEP Oil and Hazardous Materials Report at 2, ECF Nos. 19-3, 59-8.)[5] After Joseph Jurkenas arrived, he was informed of the oil spill and electrical

[3] Plaintiffs deny that the two women were yelling for help. (PRDSAMF at 7.) For purposes of analyzing Plaintiff's summary judgment motion only, the Court adopts the version more favorable to Defendants.

[4] Plaintiffs also assert that Marie Pozniak should not have been brought to the hospital after being carried out of the building, and Plaintiffs are evidently dissatisfied with her processing and treatment at the hospital. Plaintiffs' contentions, however, do not appear to be directly relevant to the remaining legal claim against the named defendants.

[5] The firefighter's report asserted that DEP had estimated that around twenty gallons has spilled, but the DEP report contains an estimate of five gallons; the Court has included the number the DEP responder used.

issues, as well as several other safety concerns that would need to be rectified before power would be restored and occupancy could be resumed. (*Id.*) Defendant Brooks placed a placard on the property designating it as being "Unfit for Habitation," and directed Plaintiffs to cease occupation of the building immediately. (DSAMF ¶¶ 5–6; see also, ECF Nos. 8-2, 59-5.)

One week after the incident, the DEP responder reinspected the basement, collected the sorbents, and determined that no further action would likely be needed. (DEP Oil and Hazardous Materials Report at 2.) On June 4, 2014, Joseph Jurkenas met with Defendant Brooks and Defendant Bost, the City Manager. (DSAMF ¶ 7.) According to Defendants, Joseph Jurkenas represented that he would work to correct the violations. (Affidavit of James Smith ¶¶ 7–8, ECF No. 59-1.)[6]

On June 5, 2014, Deputy Chief Cammack checked on the operation of a gas generator at the property. (Cammack Incident Report at 1.) After speaking with a man who was present and working for Joseph Jurkenas and after observing that the electrical generator was connected to the electrical system by bare wires inserted into the receptacle on the generator, Deputy Chief Cammack, with two code enforcement officers, shut down the generator and informed the worker that it was not safe to work in the basement with the generator connected to the wiring in the basement.[7] (*Id.* at 1–2.)

[6] According to Plaintiffs, the meeting only consisted of insults directed at Joseph Jurkenas and his removal at the hands of the police. (PRDSAMF at 10.) For purposes of analyzing Plaintiff's summary judgment motion only, the Court adopts the version more favorable to Defendants.

[7] Plaintiffs maintain that there was no risk of arcing or fire from the gas generator or the connection method in question. For purposes of analyzing Plaintiff's summary judgment motion only, the Court adopts the version more favorable to Defendants.

On June 11, 2014, the City issued a Notice of Violation and Order of Corrective Action, (ECF No. 59-3, hereinafter NOV), which was served on Marie Pozniak on June 13, 2014, on counsel for Plaintiffs on June 12, on Patricia Jurkenas on June 14, and on Joseph Jurkenas on June 30. (DSAMF ¶¶ 9–13.) The NOV stated that Plaintiffs were in violation of several state statutes, including: (1) 17 M.R.S. § 2851, which permits municipal officers after notice and a hearing to "adjudge a building to be a nuisance or dangerous" and dispose of the building; (2) 30-A M.R.S. §4172, which provides for electrical inspections and certificates of acceptance at the request of occupants or municipal officers; and (3) 22 M.R.S. § 1561, which allows local officials to order the removal within twenty-four hours of "any source of filth . . . deemed to be potentially injurious to health" and if not removed, remove the nuisance at the owner or occupant's expense. (NOV at 1.) The notice also stated that Plaintiffs were in violation of (1) several provisions of the Brewer Land Use Code related to junkyards, setbacks, sanitation, and vegetation; (2) the Brewer Solid Waste and Recycling Ordinance; (3) the Brewer electrical code Ordinance; and (4) multiple provisions related to rubbish and building upkeep of the B.O.C.A. Property Maintenance Code, which Brewer had adopted. (*Id.* at 2–4.)

The City summarized the violations as follows:

> The property has become a danger to its inhabitants and to the neighborhood as a whole. The amount of garbage and refuse present within the home and on the property is an attractive nuisance and a serious health concern. The state of the electrical wiring within the home is of grave concern, bare wires, open junction boxes, uncovered electrical panel, and dead ended wires that have every potential to be live and seriously injure someone. There are at 2

> oil tanks within the home and 5 outside, as well as a number of 50 gallon drums that contain waste oil that has spilled in the home and on the property.
>
> During a fire response call on Saturday May 24th the emergency response team had difficulty maneuvering occupants of the home out safely due to obstructions that have been created inside the home creating a life safety risk. The Department of Environmental Protection was called out for the oil leak and contamination in the basement. Power was then disconnected and the house deemed unfit for human habitation.

(*Id.* at 3, 5.)[8] The City ordered Plaintiffs to:

> Remove all trash, rubbish, and debris from the property in accordance with the City of Brewer's Codes and Ordinances. Work with the Department of Environmental Protection to clean up the onsite contamination and hazardous waste properly and submit to the City of Brewer an engineered plan stamped by a professional engineer that the removal of contaminated soils in the basement will not render the building structurally unsound. Repair all electrical violations, remove any obstacles that could hinder life safety for the occupants of the home, repair life safety devices within the home including but not limited to railings, smoke/CO2 detectors, doors, windows, etc. no later than 30 days from the date of service.

(*Id.* at 5.)

At the end of the document, just above the date and signature of the code enforcement officer, the NOV stated that:

> As permitted by Chapter 24, Article 13, Section 1302.1 of the City of Brewer's Land Use Code, an appeal of this enforcement action may be taken to the Zoning Board of Appeals within thirty (30) days of date of this order in accordance with Chapter 34 of the City of Brewer Charter, Codes and Ordinances. Failure to exercise this administrative procedure will jeopardize your right of appeal.
>
> Please contact the Code Enforcement Officer at City Hall or by telephone at 989-7790 if you have any questions concerning this violation and to make arrangements to bring this issue into compliance. You must notify the Code

[8] It appears that the pages of the document submitted to the Court are not in the correct order. The fourth page and the third page are in reverse order.

> Enforcement Officer when corrective action is taken so that a compliance check may be made.

(*Id.* at 5.)

On July 22, 2014, the City received an appeal from Plaintiffs signed by Joseph Jurkenas on July 16 and by Patricia Jurkenas and Marie Pozniak on July 17. (Appeal of NOV at 1, 4, ECF No. 59-13.) The letter noted that Plaintiffs had previously inquired through counsel about a form for filing an appeal but were told that no such form was available. (*Id.* at 1.) Plaintiffs argued that the City's notice and order were overly burdensome because, while Plaintiffs had started some of the remediation work requested, they did not have the time or financial means to complete all of the work within thirty days. (*Id.*) Plaintiffs wrote that they were "working with the Code Enforcement Officer to arrive at a workable resolution of the majority of the issues demanded. . . ." (*Id.*)

Plaintiffs' submission also raised the issue of the propriety of the determination that their house was unfit for human habitation. (*Id.* at 1–2.) Plaintiffs asserted that the smoke on May 24, 2014, was not caused by an electrical issue but was instead caused by a malfunctioning nozzle within the furnace, which malfunction resulted in fuel leaking onto the floor and a fire within the furnace enclosure. (*Id.* at 3.)[9] Plaintiffs argued that electricity is not a requirement for habitation during the summer, claimed that any emergency ended the same day the furnace was shut down and the smoke cleared, and noted that they were never told of a process to appeal from the May 24 determination. (*Id.* at 2.) In August

[9] The Court has cited the pages as submitted, but it appears that the second and third pages are reversed in the version of the document submitted to the Court.

2014, the City notified Plaintiffs that their appeal was denied as untimely and for failure to pay the requisite fee. (Smith Affidavit ¶ 14.) Plaintiffs did not file a lawsuit in state court pursuant to Maine Rule of Civil Procedure 80B challenging the decisions of the code enforcement officer and the Board of Appeals. (DSAMF ¶ 27.)

On September 5, 2014, DEP re-inspected the house, measured the levels of volatile organic compounds in the basement, determined there was nothing left to cleanup, and notified the City that DEP had no further interest in the site at that time. (DEP Letter to Brewer Code Enforcement Office, ECF Nos. 8-2, 59-17.) The City Council considered action under Maine law (17 M.R.S. § 2851 et seq.) and on September 16, 2014, issued an order that set a public hearing for October 14, 2014, to determine if the City should dispose of the building because it was dangerous. (Smith Affidavit ¶ 17; Hearing Notice, ECF No. 59-14.) The code enforcement office reissued a placard at the property on or around September 18, 2014. (ECF No. 59-19.)

Plaintiffs attempted to comply with the City's notice and order. Plaintiffs removed some refuse in early September, (Dumpster Invoice, ECF No. 59-26), and in a September 19, 2014, letter to code enforcement, Plaintiffs represented that an electrical inspection was scheduled for September 23, 2014. (Letter, ECF Nos. 59-16, 59-20.) Although Plaintiffs were present and prepared for a hearing on October 14, 2014, the City Council tabled the matter and did not hold a hearing, citing the City's longstanding policy to use the state dangerous building statute as a last resort, and the ongoing inspection efforts and interactions between the code enforcement office and Plaintiffs. (Letter, ECF No. 59-15; Smith Affidavit ¶¶ 18–22; PRDSAMF at 15–19.)

Although the City maintains that Plaintiffs had not remedied every violation, in July 2015, the power was restored, the property was reinspected, the City agreed to issue a temporary certificate of occupancy, and the City removed the unfit for habitation placard. (DSAMF ¶¶ 39–40.) The code enforcement office deemed the property unfit for habitation again in January 2016 after the tenants damaged the heating system. (DSAMF ¶¶ 41–42.) By September 2016, Plaintiffs were still seeking to resume occupancy of the property, but the City would not issue a certificate of occupancy without a legally installed automatic heating system for the entire home, a complete and functioning system to detect smoke and carbon monoxide, a functioning hot and cold pressurized water system, and without compliance with the property maintenance code and the electrical code. (Emails, ECF No. 59-23.)

In July 2017, Plaintiffs requested another temporary certificate of occupancy. Although Plaintiffs were still making efforts regarding such things as debris removal, the City declined to issue a certificate of occupancy and threatened to begin enforcing large fines for the alleged violations. (Letters, ECF Nos. 59-21, 59-24; Emails, ECF Nos. 59-22, 59-25.) To date, Plaintiffs have not resumed occupancy of the house.

**B. Procedural History**

In May 2020, Plaintiffs filed a complaint asserting various claims against the City and two municipal employees related to their alleged removal from their property on May 24, 2014. (Complaint, ECF No. 1.) The complaint was accompanied by a motion for leave to proceed in forma pauperis, which the Court granted. (Motion, ECF No. 2; Order, ECF No. 3.) In June 2020, the Court also granted Plaintiffs' motion to amend the complaint,

permitting Plaintiffs to add the Estate of Marie L. Pozniak as a party.[10] (Motion to Amend, ECF No. 6; Order, ECF No. 7.)

After a further amendment to the complaint and on Defendants' motion to dismiss, the Court dismissed Plaintiffs' substantive due process claim because Defendants' alleged actions were not so arbitrary and capricious as to shock the conscience, as federal law requires for such a claim, but the Court denied Defendants request to dismiss the procedural due process claim regarding Plaintiffs' alleged entitlement to a hearing. (Order, ECF No. 44; Recommended Decision, ECF No. 31.) Plaintiffs subsequently filed their motions for summary judgment and directed verdict.

## DISCUSSION

### A. Plaintiffs' Motion for Summary Judgment

The Fourteenth Amendment prohibits state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection has both substantive and procedural components. *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005). The procedural component of the due process guarantee "normally requires notice and an opportunity for some kind of hearing" but "[w]hether the opportunity needs to be furnished before the seizure or whether a post-seizure opportunity is sufficient depends on the circumstances." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (quotation omitted). Courts

[10] Marie Pozniak died in April 2015. (Attachment, ECF No. 1-4.)

determine which procedural protections are required "according to a sliding scale, balancing a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." *Amsden*, 904 F.2d at 753.

Plaintiffs argue the City violated their procedural due process rights by failing to hold a hearing as required in order to dispose of their property under the Maine dangerous building statute. Pursuant to that law, municipal officers can, "after notice . . . and a hearing, adjudge a building to be a nuisance or dangerous" and dispose of the property, unless the owner or occupants obtain a stay or successfully appeal the local decision in the state courts. 17 M.R.S. § 2851. The record establishes that the City considered disposing of the property pursuant to the state statute, but the City ultimately did not use the process to dispose of the house. Plaintiffs, therefore, are not entitled to summary judgment on their claim that the municipal officers' decision to table the matter violated the state statute and deprived Plaintiffs of their due process rights.

The only deprivation of Plaintiffs' property evident in the summary judgment record resulted from the decisions of the code enforcement officers to prohibit occupancy without a pre-deprivation hearing and the subsequent decisions of the code enforcement officer and town manager to decline to issue an occupancy permit for Plaintiffs. Defendants argue they followed state law, which allows them to "secure buildings that pose a serious threat to the public health and safety" without prior notice that the municipality plans to dispose of the building "if the threat to the public health and safety requires prompt action," 17

M.R.S. § 2856, and that they followed local ordinances, which among other things, allows code officials "to order and require the occupants to vacate the premises forthwith" and prohibit "any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition, or of demolishing the same" whenever "there is actual or potential danger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment . . . ." (Property Maintenance Code § 109.1; ECF No. 59-9.)

Plaintiffs do not challenge the procedural adequacy of the state laws and local ordinances,[11] perhaps because the laws and ordinances are consistent with the basic principle that "due process does not require the usual up-front procedural protections in dealing with emergencies" when state law provides for a post-deprivation remedy. *S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 86 (1st Cir. 2014). Plaintiffs instead argue that there was no actual emergency and, therefore, the code enforcement officers unlawfully deprived them of notice and a hearing before deeming the property unfit for habitation. That claim fails, however, under the Supreme Court's reasoning in *Parratt v. Taylor*, 451 U.S. 527 (1981), *Hudson v. Palmer*, 468 U.S. 517

[11] Plaintiffs do challenge the City's Property Maintenance Code on alternative grounds. Plaintiffs assert that since 2010, the Maine Uniform Building and Energy Code (MUBEC) preempts alternate building codes such as the BOCA code that the City adopted. Because Plaintiffs did not plead a claim challenging the property maintenance code on state law preemption grounds, the Court need not address that claim. Had Plaintiffs alleged such a claim, Plaintiffs do not provide any authority to support their argument that the MUBEC preempts property maintenance codes. Even if Plaintiffs' argument regarding the scope of MUBEC preemption had merit, because there are very similar provisions within the model codes incorporated into the MUBEC, it is not clear how Plaintiffs' argument could entitle them to any relief. *See e.g.*, International Existing Building Code § 116.1.

(1984), and *Zinermon v. Burch*, 494 U.S. 113 (1990). The so-called *Parratt-Hudson* doctrine provides:

> So long as a state has not set up a scheme so open-ended it invites unwarranted uses of summary process, *see Zinermon*, 494 U.S. at 138, and so long as a state provides an adequate after-the-fact remedy for any wrongful summary action, *see Parratt*, 451 U.S. at 543–44, allegations of the kind of "random and unauthorized" mistakes in application that those who work in government sometimes make are not enough to state a procedural due process claim, *Hudson*, 468 U.S. at 533.

*S. Commons Condo. Ass'n*, 775 F.3d at 89 (alternate citations omitted).

Even if Plaintiffs could ultimately convince a fact finder that there was no emergency that could justify the eviction, Plaintiffs have not shown there was inadequate post-deprivation process available for them to challenge the unfit for habitation determination because there was an administrative appeal and a cause of action in the state courts under Maine Rule of Civil Procedure 80B. *See Herwins*, 163 F.3d at 19 ("It is undisputed that [Plaintiffs] could have challenged the [eviction] by appealing the order to the City [board of appeals] and, if dissatisfied with its decision, could have appealed the ruling to the state courts").

Although Plaintiffs argue that they were not told of their right to appeal from the original unfit for habitation decision and dispute the grounds upon which the City denied their appeal, the failure to provide notice of the right to appeal "does not render the review remedy constitutionally inadequate" because "in most civil matters, citizens are expected to ask about the method to protest or appeal an initial administrative action (or to hire a lawyer)" and because Plaintiffs could have challenged the local decision on those grounds in state court. *Id.* at 20. Plaintiffs have simply not demonstrated that as a matter of law

there was no actual emergency nor have Plaintiffs demonstrated as a matter of law that they were due more process under the applicable legal authority.

**B. Defendants' Summary Judgment Request**

Defendants have not filed a motion for summary judgment, but they argue in response to Plaintiffs' motion that the Court should grant summary judgment in Defendants' favor. Pursuant to Federal Rule of Civil Procedure 56(f), "after giving notice and a reasonable time to respond," the Court has the discretion (1) to "grant summary judgment for a nonmovant," (2) to grant a summary judgment motion "on grounds not raised by a party," or (3) to grant summary judgment "on its own after identifying for the parties material facts that may not be genuinely in dispute."

Because on the summary judgment record, Plaintiffs could not prevail on their due process claim, and because there have been extensive filings on Plaintiffs' due process claim, summary judgment conceivably could be entered in favor of Defendants. *See Nationwide Book Indus., LLC v. A & S Booksellers, Inc.*, 950 F. Supp. 2d 264, 266 (D. Mass. 2013) ("Thus, the law in the First Circuit is well established that a party that moves for summary judgment runs the risk that the court may grant summary judgment sua sponte against the movant") (internal quotation marks omitted). Rule 56 requires notice and an opportunity to be heard before the Court enters summary judgment in favor of a non-moving party. Accordingly, the Court informs Plaintiff that it will consider Defendants' request for summary judgment and that if Plaintiffs wish to respond to Defendants' request, Plaintiffs shall file their response on or before December 9, 2021.

### C. Motion for Directed Verdict

Plaintiffs also filed a motion for a directed verdict. The relevant rule of civil procedures provides that:

> **(1) In General.** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > **(A)** resolve the issue against the party; and
> >
> > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2) Motion.** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a). Plaintiffs rely on the "may be made at any time before the case is submitted to the jury" language within the the first sentence of subparagraph (2) to argue that a motion for a directed verdict offers a different avenue of relief than summary judgment.

Plaintiffs cite no authority in support of their interpretation of the rule. Their interpretation also ignores the context of the other portions of Rule 50. The type of "motion" discussed in subparagraph (2) is described more generally in subparagraph (1)(B), and subparagraph (1) explicitly applies "during a jury trial." As Defendants argue, Rule 50 authorizes a trial motion, not an alternative to summary judgment. Accordingly, the Court denies Plaintiffs' motion for directed verdict.

## CONCLUSION

Based on the foregoing analysis and findings, the Court denies Defendants' motion to strike, denies Plaintiffs' motion for summary judgment, and denies Plaintiffs' motion for a directed verdict. If Plaintiffs wish to respond to Defendants' request for summary judgment, ECF No. 74, Plaintiffs shall file their response on or before December 9, 2021.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 18th day of November, 2021.